IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| CONSUELO CERVANTES,  §<br>     Plaintiff,  §<br>  §<br>v.  §<br>  § EP-18-CV-110 -KC<br>TENET HOSPITALS LIMITED, a Texas  §<br>Limited Partnership, d/b/a THE HOSPITALS  §<br>OF PROVIDENCE EAST CAMPUS,  §<br>     Defendant  § | |

## PLAINTIFF'S AMENDED ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES**, CONSUELO CERVANTES, Plaintiff complaining of TENET HOSPITALS LIMITED, a Texas Limited Partnership, d/b/a THE HOSPITALS OF PROVIDENCE EAST CAMPUS, Defendant, for cause of action would show the Court the following:

### PARTIES

1. CONSUELO CERVANTES is an individual residing in El Paso, El Paso County, Texas.

2. Defendant TENET HOSPITALS LIMITED, a Texas Limited Partnership, d/b/a THE HOSPITALS OF PROVIDENCE EAST CAMPUS (hereinafter "Providence"), may be served with process by serving its agent CT Corporation System, 701 Brazos, Suite 720, Austin, Texas 78701, by certified mail return receipt requested.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because Plaintiff brings this suit pursuant to 42 U.S.C §1395dd, also known as the Federal Emergency Medical Treatment and Active Labor Act (hereinafter referred to an "EMTALA").

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

5. On April 9, 2016 and April 10, 2016, Plaintiff had sought care in the emergency department of Del Sol Medical Center, where a non-reducible loop of bowel had been detected in her umbilical area.

6. Plaintiff was discharged from Del Sol's emergency department at 6:32 am on April 10, 2016 and told to go to another hospital.

7. The Providence emergency physician documented that Plaintiff had a tender mass in her umbilical area.

8. The medical term for loops of bowel that are trapped outside of the abdominal cavity is "incarcerated."

9. Intestines that are incarcerated are at risk of becoming ischemic and are a surgical emergency.

10. Ischemia of the intestines can lead to death of the bowel.

11. Ischemia of the intestines can lead to sepsis due a release of toxins and bacteria into the body through the injured bowel wall.

12. Sepsis causes shock and is frequently lethal.  If the patient does not die from the sepsis, the patient may have a long and complicated recovery which may leave her debilitated for many months.

13. On April 10, 2016, at 6:59 a.m., Consuelo Cervantes sought emergency care at Providence's emergency department for abdominal pain.

14. Plaintiff's blood pressure was low at 97/49 and her pulse was abnormally fast at 125 beats per minute, indications of shock.

15. At that time, she reported her pain level to be 8 out of 10.

16. Plaintiff was in shock when she sought care at Providence.

17. Shock is an emergency medical condition and Plaintiff required immediate resuscitation with intravenous fluids.  Shock due to sepsis requires immediate intravenous fluids and antibiotics.  Intravenous fluids and antibiotics were not given to Plaintiff for several hours after she arrived.

18. At 10:37 a.m., the emergency physician, Manuel Aranda, M.D., spoke with Dr. Jaime Gomez, a general surgeon regarding consultation on Plaintiff.  Dr. Gomez reportedly accepted the consult but agreed to see Plaintiff in his office in 2-3 days.

19. At 11:34 a.m., Plaintiff was given a bolus of 2000 cc's of normal saline intravenously, as she had a pulse of 140 beats per minute and an abnormally high respiratory rate of 24 breaths per minute, signs of physical deterioration.

20. At 12:36 p.m., Dr. Aranda ordered a CT scan with contrast of Plaintiff's abdomen.

21. The scan was not ordered stat (emergently). Its findings were reviewed by Dr. Aranda at 3:41 p.m.

22. As of 3:41 p.m., Consuelo Cervantes had been in documented shock for over 8 hours.

23. The CT scan revealed a pneumoperitoneum (air in the abdominal cavity outside of the intestines), fluid in the abdominal cavity outside of the intestines and a ventral hernia above the umbilicus containing loops of bowel.

24. At 3:46 p.m., Dr. Jaime Gomez was again consulted but refused the consultation.

25. At 3:50 p.m., a call was placed to Oluwamayowa Familua, M.D., the general surgeon believed to be on-call for emergency patients.

26. Dr. Familua called back at 4:21 p.m. and agreed to care for Consuelo Cervantes.

27. At 4:09 p.m., orders were given to admit Consuelo Cervantes to the intensive care unit (ICU).

28. At 4:22 p.m., Plaintiff received a second intravenous of normal saline and the first dose of an anti-biotic, Flagyl.

29. At 5:21 p.m., a drug, phenylephrine, was given intravenously to increase Plaintiff's blood pressure.

30. At 5:30 p.m, Dr. Ikedieze Chukwu assessed Connie Cervantes and notified Dr. Oluwamayowa Familua of the need for emergency surgery.

31. At 6:00 p.m. Consuelo Cervantes was still in shock and still in the emergency department.

32. Consuelo Cervantes was transferred to ICU under the care of Dr. Chuckwu for shock due to sepsis.

33. At 7:00 p.m., twelve hours after Consuelo Cervantes sought emergency care at Providence for her abdominal pain, she was taken to surgery by Oluwamayowa Familua, M.D., who found Consuelo Cervantes had a perforated and necrotic small bowel, diffuse peritonitis, and an intra-abdominal abscess.

34. Consuelo Cervantes remained hospitalized at Providence until May 19, 2016, due to numerous complications, including respiratory and renal failure, caused by the delay in obtaining surgical resolution of her incarcerated bowel.

35. On May 19, 2016, Plaintiff was transferred to St. Teresa Nursing and Rehabilitation Center where she remained until mid-July, 2016.

36. Plaintiff was too debilitated to be medically cleared to seek work for over a year after being discharged from St. Teresa.

## CAUSE OF ACTION – EMTALA VIOLATION

37. Plaintiff repeats and incorporates each of the allegations contained in the preceding paragraphs as if set forth fully herein.

38. Plaintiff went to Providence's emergency room.

39. Plaintiff had an emergency medical condition.

40. Providence did not adequately screen Plaintiff to determine whether Plaintiff had such an emergency condition or Providence failed to timely stabilize Plaintiff, knowing she had an emergency medical condition.

## PROXIMATE CAUSE

41. Defendant's EMTALA violation is a proximate cause of the injuries and damages set forth in this Petition.

## DAMAGES

42. As a direct and proximate result of Providence's violations of EMTALA, Plaintiff seeks a judgment awarding compensation for: (1) Physical pain and suffering; (2) Mental anguish; (3) Loss of income; (4) Medical expenses; (5) Deconditioning and physical impairment; (6) Decreased life expectancy; and (7) any award she is entitled to for its EMTALA violation, including punitive damages.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Defendant be cited to appear and answer, and that upon final hearing of this cause, judgment be entered for the Plaintiff against Defendant for her damages as set out above, in an amount within the jurisdictional limits of the Court, for an award in keeping with the intent of EMTALA, together with pre-judgment interest at the maximum rate allowed by law, post-judgment interest at the maximum legal rate, costs of court, and for such other and further relief to which she may be entitled at law or in equity.

Respectfully submitted,

/s/ *John Grost*
**JOHN GROST**
619 E. Crosby
El Paso, Texas  79902
(915) 533-6001
(915) 533-6077 (FAX)
State Bar No. 08548200
E-Mail: john@johngrostlaw.com

and

**VALENZUELA LAW FIRM**
221 N. Kansas Suite 1203
El Paso, Texas 79901
(915) 209-2719
(915) 493-2404 Facsimile
/s/ *Felix Valenzuela*
Texas Bar No. 24076745

**ATTORNEYS FOR PLAINTIFF**