IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CONSUELO CERVANTES, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:18-cv-00110-KC |
| TENET HOSPITALS LIMITED, a Texas Limited Partnership, d/b/a THE HOSPITALS OF PROVIDENCE EAST CAMPUS, | § § § § § | |
| Defendant. | § § | |

**DEFENDANT TENET HOSPITALS LIMITED d/b/a THE HOSPITALS OF PROVIDENCE EAST CAMPUS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

|     |     |     | Page |
| --- | --- | --- | --- |
| TABLE OF AUTHORITIES | | | ii |
| STATEMENT OF ISSUES | | | v |
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 1 |
| III. | ARGUMENT | | 3 |
| | A. | Legal Standard | 3 |
| | B. | Plaintiff's Allegations Fail to State a Cognizable EMTALA Claim. | 5 |
| | | 1. EMTALA Overview | 5 |
| | | 2. Plaintiff's Inappropriate Screening Claim Fails Because Plaintiff Concedes the Hospital Identified Her Emergency Medical Condition | 5 |
| | | 3. Alternatively, Plaintiff Fails to Plead Facts Sufficient to Show the Hospital Violated EMTALA's "Appropriate Medical Screening Examination" Prong | 9 |
| | | 4. Plaintiff's Alternative Claim That The Hospital Failed to Timely Stabilize Plaintiff Fails Because Plaintiff Was Admitted to the Hospital | 10 |
| IV. | CONCLUSION | | 13 |
| CERTIFICATE OF SERVICE | | | 14 |

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Pages**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 679 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Battle v. Mem'l Hosp. at Gulfport*,
   228 F.3d 544, 557 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Benitez-Rodriguez v. Hosp. Pavia Hato Rey, Inc.*,
   588 F. Supp. 2d 210, 216 (D.P.R. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Bryan v. Rectors & Visitors of the Univ. of Va.*,
   95 F.3d 349, 351 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bryant v. Adventist Health Sys./West*,
   289 F.3d 1162, 1167 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cervantes v. El Paso Healthcare Sys. Ltd.*,
   No. 2017-DCV-4175 (El Paso Cnty. Ct. at Law 3). . . . . . . . . . . . . . . . . . . . . . 1

*Cervantes v. El Paso Healthcare Sys., Ltd. d/b/a Del Sol Med. Ctr.*,
   No. EP-18-CV-111-PRM (W.D. Tex.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Cervantes v. The Hosps. of Providence E. Campus*,
   No. 2018DCV0975 (205th Dist. Ct., El Paso County) . . . . . . . . . . . . . . . . . . . 1

*Collins v. DePaul Hosp.*,
   963 F.2d 303, 306-07 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Correa v. Hosp. San Francisco*,
   69 F.3d 1184, 1189 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Elkharwily v. Mayo Holding Co.*,
   84 F. Supp. 3d 917, 928 (D. Minn. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fin. Acquisition Partners LP v. Blackwell*,
   440 F.3d 278, 286 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Guidry v. Bank of LaPlace*,
   954 F.2d 278, 281 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Guzman v. Mem'l Hermann Hosp. Sys.*,
 637 F. Supp. 2d 464, 480 (S.D. Tex. 2009) . . . . . . . . . . . . . . . . . . 7, 8, 9

*Hardy v. N.Y.C. Health & Hosps. Corp.*,
 164 F.3d 789, 792 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Harry v. Marchant*,
 237 F.3d 1315, 1319 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*Lopez v. Contra Costa Reg. Med. Ctr.*,
 903 F. Supp. 2d 835, 842 (N.D. Ca. 2012) . . . . . . . . . . . . . . . . . . . . . 12

*MacNeill v. Jayaseelan*,
 No. 4:14-cv-242-O, 2014 WL 12712420 . . . . . . . . . . . . . . . . . . . . . . 4

*Marshall v. E. Carroll Parish Hosp. Serv. Dist.*,
 134 F.3d 319, 322 (5th Cir. 1998) . . . . . . . . . . . . . . . . . 5, 8, 9, 10, 12

*Ramming v. United States*,
 281 F.3d 158, 161 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Slabik v. Sorrentino*,
 891 F. Supp. 235, 237 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . 12

*Stiles v. Tenet Hosps. Ltd.*,
 No. EP-09-CA-463-FM, 2011 WL 13070423, at *5 (W.D. Tex. Aug. 16, 2011) . . . . 5

*Summers v. Baptist Med. Ctr. Arkadelphia*,
 91 F.3d 1132, 1138 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thornhill v. Jackson Parish Hosp.*,
 184 F. Supp. 3d 392, 401 (W.D. La. 2016) . . . . . . . . . . . . . . . . . . . . 12

*Vickers v. Nash Gen. Hosp., Inc.*,
 78 F.3d 139, 143 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

**Rules and Statutes**

Federal Rule of Civil Procedure 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 7

Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd . . . . . . . . . . . . . . 1

Emergency Medical Treatment and Labor Act;
   77 Fed. Reg. 5213, 5214 (Feb. 2, 2012) . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C §§ 1395dd(a)-(c), (e)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

42 U.S.C. § 1395dd(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 1395dd(b)(1)(A)-(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

42 U.S.C. § 1395dd(e)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 C.F.R. § 489.24(a). Section (d)(2)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Other Authorities**

Pl.'s Am. Orig. Pet. ¶¶ 5-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pl.'s Am. Orig. Pet. ¶ 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pl.'s Am. Orig. Pet. ¶ 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pl.'s Am. Orig. Pet. ¶¶ 32-33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pl.'s Am. Orig. Pet. ¶ 40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10

## STATEMENT OF ISSUES

1. Whether EMTALA provides a cause of action based on a hospital's alleged failure to provide an appropriate medical screening examination to an individual where the hospital identified the individual's emergency medical condition.

2. Whether EMTALA provides a cause of action based on a hospital's alleged failure to timely stabilize an individual while knowing an emergency medical condition existed where the individual was admitted to the hospital for further treatment.

## I. INTRODUCTION

This lawsuit involves a federal statutory claim against Defendant Tenet Hospitals Limited, d/b/a The Hospitals of Providence East Campus (hereinafter the "Hospital") for the alleged respiratory and renal injuries purportedly sustained by Plaintiff following her care and treatment at the Hospital's Emergency Department ("ED") in April 2016.[1] Although Plaintiff's factual allegations focus on the Hospital's supposed failure to promptly treat her, Plaintiff asserts claims under the federal Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd ("EMTALA"). Plaintiff claims the Hospital failed to adequately screen whether Plaintiff had an emergency medical condition or failed to timely stabilize Plaintiff, knowing she had an emergency medical condition. As demonstrated below, Plaintiff's claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because, under either theory, Plaintiff fails to state a cognizable cause of action under EMTALA.

## II. FACTUAL BACKGROUND

As alleged by Plaintiff, at 6:59 a.m. on April 10, 2016, she sought emergency care at the Hospital's ED for abdominal pain. Pl.'s Am. Orig. Pet. ¶ 13 (Dkt. No. 5).[2] Plaintiff claims she was in shock when she presented to the Hospital's ED, having a reported pain level of 8 out of 10, low blood pressure, and an abnormally fast pulse. *Id.* ¶¶ 14-16. Plaintiff asserts that shock is an

---

[1] Federal Rule of Civil Procedure 3 provides a civil action is commenced by filing a "complaint" with the court. Given "Plaintiff's Original Petition" (Dkt. No. 1), and "Plaintiff's Amended Original Petition" (Dkt. No. 5), have been accepted by the court, Defendant will herein refer to Plaintiff's pleading as "Plaintiff's Amended Original Petition" for consistency of reference.
[2] Plaintiff asserts she sought care in the emergency department of Del Sol Medical Center on April 9 and 10, 2016, but was discharged at 6:32 a.m. on April 10 and told to go to another hospital. Pl.'s Am. Orig. Pet. ¶¶ 5-6. Plaintiff has filed a separate cause of action against Del Sol Medical Center for EMTALA violations. *See Cervantes v. El Paso Healthcare Sys., Ltd. d/b/a Del Sol Med. Ctr.*, No. EP-18-CV-111-PRM (W.D. Tex.). Plaintiff has also filed two actions asserting claims of negligence in state court against each hospital: (1) *Cervantes v. El Paso Healthcare Sys. Ltd.*, No. 2017DCV4175 (El Paso Cnty. Ct. at Law 3); and (2) *Cervantes v. The Hosps. of Providence E. Campus*, No. 2018DCV0975 (205th Dist. Ct., El Paso County).

emergency medical condition and, when due to sepsis, it requires immediate intravenous fluids and antibiotics, but that she did not receive such fluids or antibiotics until several hours after she arrived. *Id.* ¶ 17. Plaintiff alleges that at 10:37 a.m., the emergency physician, Manuel Aranda, M.D., spoke with Dr. Jaime Gomez, a general surgeon, regarding a consultation for Plaintiff.[3] *Id.* ¶ 18. Plaintiff claims Dr. Gomez accepted the consult but agreed to see her in his office in 2-3 days. *Id.*

Plaintiff alleges that at 11:34 a.m., she was given a bolus of 2000 cc's of normal saline intravenously, as she was showing signs of physical deterioration such as an abnormally high respiratory rate. *Id.* ¶ 19. Plaintiff alleges that at 12:36 p.m., Dr. Aranda ordered a CT scan with contrast of Plaintiff's abdomen, but the scan was not ordered stat (emergently). *Id.* ¶¶ 20-21. Dr. Aranda reviewed the scan's findings at 3:41 p.m. which revealed a pneumoperitoneum (air in the abdominal cavity outside the intestines), fluid in the abdominal cavity outside the intestines, and a vernal hernia above the umbilicus containing loops of bowel. *Id.* ¶¶ 21, 23. Plaintiff alleges Dr. Jaime Gomez was consulted again at 3:46 p.m., but refused the consultation. *Id.* ¶ 24.

At 3:50 p.m., Plaintiff alleges, a call was placed to Oluwamayowa Familua, M.D., the on-call general surgeon for emergency patients. *Id.* ¶ 25. Dr. Familua called back at 4:21 p.m. and agreed to care for Plaintiff. *Id.* ¶ 26. At 4:09 p.m., orders were given to admit Plaintiff to the intensive care unit ("ICU"). *Id.* ¶ 27. Plaintiff alleges that at 4:22 p.m., she received a second intravenous of normal saline and the first dose of an antibiotic. *Id.* ¶ 28. At 5:21 p.m., phenylephrine was given intravenously to increase Plaintiff's blood pressure. *Id.* ¶ 29. At 5:30 p.m., Dr. Ikedieze Chukwu assessed Plaintiff and notified Dr. Familua of the need for emergency surgery. *Id.* ¶ 30. Plaintiff was then transferred to the ICU under the care of Dr. Chukwu for shock

---

[3] Plaintiff fails to indicate the time Dr. Aranda first examined Plaintiff.

due to sepsis. *Id.* ¶ 32. Plaintiff alleges that at 7:00 p.m., she was taken to surgery by Dr. Familua, who found she had a perforated and necrotic small bowel, diffuse peritonitis, and an intra-abdominal abscess. *Id.* ¶ 33.

Plaintiff alleges she was hospitalized until May 19, 2016, due to numerous complications, including respiratory and renal failure, caused by the delay in obtaining surgical resolution of her incarcerated bowel. *Id.* ¶ 34. On May 19, she was transferred to St. Teresa Nursing and Rehabilitation Center, where she remained until mid-July 2016. *Id.* ¶ 35. Plaintiff alleges she was too debilitated to be medically cleared to seek work for over a year after being discharged from St. Teresa. *Id.* ¶ 36. Plaintiff asserts the Hospital did not adequately screen Plaintiff to determine whether she had an emergency medical condition, or the Hospital failed to timely stabilize Plaintiff, knowing she had an emergency medical condition. *Id.* ¶ 40. Plaintiff seeks compensatory and punitive damages for the Hospital's alleged EMTALA violation. *Id.* ¶ 42.

### III. ARGUMENT

#### A. Legal Standard

The Federal Rules of Civil Procedure provide for dismissal where the complaint fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

Although legal conclusions can provide the framework of a complaint, they must be "supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see id.* at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citation omitted)). A party's "[f]actual

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "[T]he plaintiff must plead specific facts, *not conclusory allegations*, to avoid dismissal." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Determining whether a complaint states a plausible claim for relief is a "context-specific" task, "requiring the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). While the court accepts the well pled factual allegations of the complaint as true and draws reasonable inferences in the plaintiff's favor, the court is not required to "strain to find inferences favorable" to a plaintiff, nor does it accept as true "conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotation marks and citations omitted).

In the context of EMTALA, dismissal for failure to state a claim is appropriate when a plaintiff's EMTALA claims are, in actuality, medical negligence claims. *See, e.g., Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 143 (4th Cir. 1996); *MacNeill v. Jayaseelan*, No. 4:14-cv-242-O, 2014 WL 12712420, at *3 (N.D. Tex. Oct. 8, 2014); *Benitez-Rodriguez v. Hosp. Pavia Hato Rey, Inc.*, 588 F. Supp. 2d 210, 216 (D.P.R. 2008).

## B. Plaintiff's Allegations Fail to State a Cognizable EMTALA Claim.

### 1. EMTALA Overview

EMTALA was passed by Congress "to prevent 'patient dumping,' which is the practice of refusing to treat patients who are unable to pay." *Marshall v. E. Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998) (citations omitted). To prevent patient dumping, the statute requires that participating hospitals: (1) perform an appropriate medical screening examination to determine the presence or absence of an emergency medical condition; (2) stabilize a known emergency medical condition prior to transfer or discharge; and (3) refrain from the transfer of an unstabilized patient to another medical facility. *See* 42 U.S.C §§ 1395dd(a)-(c), (e)(3)(A).

The duty created by EMTALA, while important, "'is a limited one in a very critical sense: EMTALA is not a substitute for state law malpractice actions and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence.'" *Stiles v. Tenet Hosps. Ltd.*, No. EP-09-CA-463-FM, 2011 WL 13070423, at *5 (W.D. Tex. Aug. 16, 2011) (quoting *Vickers*, 78 F.3d at 142), *aff'd*, 494 F. App'x 432 (5th Cir. 2012); *see also Marshall*, 134 F.3d at 325 ("[EMTALA] was not intended to be used as a federal malpractice statute . . . ." (citations omitted)). Accordingly, an "appropriate medical screening examination" under EMTALA is "not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms." *Id.* at 322 (citations omitted).

### 2. Plaintiff's Inappropriate Screening Claim Fails Because Plaintiff Concedes the Hospital Identified Her Emergency Medical Condition.

Plaintiff alleges the Hospital did not "adequately" screen Plaintiff to determine whether Plaintiff had an emergency medical condition. Pl.'s Am. Orig. Pet. ¶ 40. Yet Plaintiff admits that

the Hospital not only determined that she needed emergency surgery, *id.* ¶ 30, but that she was admitted to the ICU and underwent such emergency surgery. *Id.* ¶¶ 32-33. Plaintiff further admits she remained at the Hospital until May 19, *id.* ¶ 34—*39 days* after initially presenting to the ED. Because Plaintiff concedes the Hospital's medical screening examination identified Plaintiff's emergency medical condition (shock due to sepsis), Plaintiff's inappropriate screening claim fails to state a claim upon which relief can be granted.

Under EMTALA, if an individual presents at an emergency department and a request is made on their behalf for examination or treatment for a medical condition, the hospital "must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists."[4] 42 U.S.C. § 1395dd(a). An "emergency medical condition" means a medical condition

> "manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in[] (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part . . . ."

*Id.* § 1395dd(e)(1)(A).

If the hospital detects an emergency medical condition, the hospital must provide either "within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or for transfer of the individual to another medical facility" in accordance with other EMTALA requirements. *Id.* §§ 1395dd(b)(1)(A)-(B).

---

[4] Contrary to the wording in Plaintiff's Amended Original Petition, the proper inquiry is whether the Hospital provided for an ***appropriate*** medical screening examination within the capabilities of the ED, 42 U.S.C. § 1395dd(a), not whether it "adequately" screened Plaintiff to determine whether she had an emergency medical condition. *See* Pl.'s Am. Orig. Pet. ¶ 40.

EMTALA does not "define 'appropriate medical screening examination' other than to state that its purpose is to identify an emergency medical condition." *Guzman v. Mem'l Hermann Hosp. Sys.*, 637 F. Supp. 2d 464, 480 (S.D. Tex. 2009), *aff'd*, 409 F. App'x 769 (5th Cir. 2011). That is precisely what happened here. As the medical screening examination provided to Plaintiff achieved EMTALA's purpose of identifying a patient's emergency medical condition, Plaintiff's own allegations, if taken as true, conclusively demonstrate the medical screening examination provided to Plaintiff was appropriate, thereby precluding her EMTALA claim.

Numerous federal courts have dismissed EMTALA claims based on the failure to provide an appropriate medical screening examination where the hospital identified the emergency medical condition at issue. *See, e.g., Harry v. Marchant*, 237 F.3d 1315, 1319 (11th Cir. 2001) (affirming 12(b)(6) dismissal of EMTALA claim where plaintiff's allegations demonstrated hospital conducted initial screening examination and determined plaintiff had an emergency medical condition); *Vickers*, 78 F.3d at 143 (affirming 12(b)(6) dismissal of EMTALA claim based on "appropriate medical examination screening" prong / holding that EMTALA's screening provision requires a medical examination "to determine whether or not an emergency condition exists" and is not concerned with treatment that follows from the screening); *Collins v. DePaul Hosp.*, 963 F.2d 303, 306-07 (10th Cir. 1992) (holding, in summary judgment context, that hospital determined plaintiff had an emergency medical condition and placed him in ICU defeats an EMTALA claim based on "appropriate medical examination screening" prong); *Benitez-Rodriguez*, 588 F. Supp. at 216 ("It would border on the absurd to conclude that a hospital that has provided extensive emergency and inpatient care to an individual[] failed to screen him or her as it would any other patient in his or her condition."). This is so because the purpose of the medical

screening examination is "to determine whether an 'emergency medical condition exists.' Nothing more, nothing less." *Collins*, 963 F.2d at 307.

To the extent Plaintiff complains about any delay in which she was provided examination and treatment, any such claims are actually recast claims of medical negligence.[5] Here, Plaintiff asserts that intravenous fluids and antibiotics were not given to Plaintiff for several hours after she arrived, Pl.'s Am. Orig. Pet. ¶ 17; after Dr. Aranda requested a consultation, Dr. Gomez replied that he could not see Plaintiff in his office until 2-3 days, *id.* ¶ 18; and the CT scan of Plaintiff's abdomen ordered by Dr. Aranda was not ordered stat. *Id.* ¶ 18, 20. Having admitted that Dr. Aranda examined Plaintiff at the latest at 10:37 a.m., *id.* ¶¶ 7, 18, and made efforts to obtain a consult from a general surgeon and to obtain radiological studies, *id.* ¶¶ 18, 20, Plaintiff's complaints can be logically premised on only two possible scenarios: (1) Dr. Aranda failed to diagnose Plaintiff with shock due to sepsis when he should have, or (2) Dr. Aranda correctly diagnosed Plaintiff with shock due to sepsis but was negligent in acting on such diagnosis. Under both scenarios, such complaints are of medical negligence, not that the Hospital failed to screen Plaintiff as a similarly conditioned patient.

Under EMTALA, a hospital's liability "is not based on whether the physician misdiagnosed the medical condition or failed to adhere to the appropriate standard of care. Instead, the plaintiff must show that the hospital treated him differently from other patients with similar symptoms." *Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000) (citing *Marshall*, 134 F.3d at 322, 324). Moreover, EMTALA claims cannot be established by couching alleged negligent conduct in EMTALA terms. *See Guzman*, 637 F. Supp. 2d at 482 ("Negligence in the

---

[5] As noted above, Plaintiff has filed two state court actions asserting negligence claims based on the same set of facts.

screening process or providing a faulty screening or making a misdiagnosis, as opposed to refusing to screen or providing disparate screening, does not violate EMTALA, although it may violate state malpractice law." (citing *Marshall*, 134 F.3d at 322)). As explained in *Marshall*, "a treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening." 134 F.3d at 323. Accordingly, because EMTALA does not create a federal cause of action for negligence and because Plaintiff's claims and criticisms sound in solely in negligence, this Court must dismiss Plaintiff's Complaint.

### 3. Alternatively, Plaintiff Fails to Plead Facts Sufficient to Show the Hospital Violated EMTALA's "Appropriate Medical Screening Examination" Prong.

Even if a medical screening examination that successfully detected an emergency medical condition could nonetheless be deemed inappropriate, this Court should dismiss Plaintiff's EMTALA claim under the "appropriate medical screening examination" prong because she has failed to assert *any* allegation that she was treated differently from other patients evincing similar symptoms. An appropriate medical screening examination is determined "by whether it was performed equitably in comparison to other patients with similar symptoms," not "by its proficiency in accurately diagnosing the patient's illness." *Marshall*, 134 F.3d at 322-23. Stated differently, "'an inappropriate screening examination is one that has a disparate impact on the plaintiff.'" *Guzman*, 409 F. App'x at 773 (quoting *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1138 (8th Cir. 1996)).

Therefore, a plaintiff must show the hospital treated her differently from other patients with similar symptoms. *Guzman*, 637 F. Supp. 2d at 481 (citation omitted). "It is the plaintiff's burden to show that the hospital treated her differently from other patients; a hospital is not

required to show that it had a uniform screening procedure." *Marshall*, 134 F.3d at 323-24. Despite this burden, the Amended Petition is devoid of any allegation or fact suggesting the Hospital treated her differently from other patients with similar symptoms. Because Plaintiff has failed to plead *any* allegation that the Hospital treated her differently from other patients, Plaintiff's EMTALA claim premised on the "appropriate medical screening examination" prong must be dismissed.

    4.  **Plaintiff's Alternative Claim That The Hospital Failed to Timely Stabilize Plaintiff Fails Because Plaintiff Was Admitted to the Hospital.**

Plaintiff alternatively alleges the Hospital "failed to timely stabilize Plaintiff, knowing she had an emergency medical condition." Pl.'s Am. Orig. Pet. ¶ 40. At the outset, Plaintiff's claim fails because EMTALA imposes no obligation that an individual be "timely" stabilized. What is more, EMTALA's stabilization requirements do not apply where a hospital has admitted an individual as an inpatient. Because Plaintiff's own allegations, if taken as true, demonstrate she was admitted to the ICU and then remained hospitalized at the Hospital for a period of 39 days, Plaintiff's stabilization claim fails.

As noted above, if the medical screening examination required by EMTALA reveals the existence of an emergency medical condition, the hospital must provide either "for such further medical examination and such treatment as may be required to stabilize the medical condition," or "for transfer of the individual to another medical facility" in accordance with other EMTALA requirements. 42 U.S.C. § 1395dd(b)(1)(A)-(B). Under EMTALA, the term "to stabilize" means "with respect to an emergency medical condition . . . [a hospital must] provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result or occur *during the transfer of the individual from a facility*." *Id.* § 1395dd(e)(3)(A) (emphasis added). Because the definition of

the term "to stabilize" is necessarily linked to the transfer of an individual, EMTALA's stabilization requirement applies where an individual requires transfer and is not admitted.

This view is consistent with both federal regulations and case law. Under the Centers for Medicare and Medicaid Services ("CMS") EMTALA Regulations, "[i]f the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under this section ends, as specified in paragraph (d)(2) of this section." 42 C.F.R. § 489.24(a). Section (d)(2)(i) states:

***Exception: Application to inpatients.***

If a hospital has screened an individual under paragraph (a) of this section and found the individual to have an emergency medical condition, ***and admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition***, the hospital has satisfied its special responsibilities under this section with respect to that individual.

*Id.* § 489.24(d)(2)(i) (emphasis added).[6] The Amended Petition is devoid of any allegation that Plaintiff's admission to the Hospital as an inpatient was not made in a good faith effort to stabilize her emergency condition. To the contrary, the crux of Plaintiff's complaint is that her surgery, and therefore, her admission to the ICU, Pl.'s Am. Orig. Pet. ¶¶ 32-33, did not occur fast enough.

Numerous federal courts have likewise concluded that a hospital's obligations under EMTALA end when a hospital admits an individual as an inpatient, both before and after the promulgation of the CMS regulation in 2003. *See, e.g., Harry v. Marchant*, 291 F.3d 767, 775 (11th Cir. 2002) ("There is no duty under EMTALA to provide stabilization treatment to a patient with an emergency medical condition who is not transferred."); *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1167 (9th Cir. 2002) ("We hold that EMTALA's stabilization

---

[6] CMS has further clarified that "EMTALA does not apply to any inpatient, even one who was admitted through the dedicated emergency department and for whom the hospital had initially incurred an EMTALA obligation to stabilize an [emergency medical condition], and who remained unstabilized after admission as an inpatient." *Medicare Program; Emergency Medical Treatment and Labor Act; Applicability to Hospital Inpatients and Hospitals with Specialized Capabilities*, 77 Fed. Reg. 5213, 5214 (Feb. 2, 2012).

- 11 -

requirement ends when an individual is admitted for inpatient care."); *Bryan v. Rectors & Visitors of the Univ. of Va.*, 95 F.3d 349, 351 (4th Cir. 1996) ("Once EMTALA has met that purpose of ensuring that a hospital undertakes stabilizing treatment for a patient who arrives with an emergency condition, the patient's care becomes the legal responsibility of the hospital and the treating physicians. And, the legal adequacy of that care is then governed not by EMTALA but by the state malpractice law that everyone agrees EMTALA was not intended to preempt."); *Thornhill v. Jackson Parish Hosp.*, 184 F. Supp. 3d 392, 401 (W.D. La. 2016) (citing CMS regulation to find hospital's duty ends once hospital admits individual as an inpatient); *Elkharwily v. Mayo Holding Co.*, 84 F. Supp. 3d 917, 928 (D. Minn. 2015) (same); *Lopez v. Contra Costa Reg. Med. Ctr.*, 903 F. Supp. 2d 835, 842 (N.D. Ca. 2012) ("[T]he regulations and case law establish that a hospital's obligations under EMTALA are satisfied by admitting the patient in good faith—and this includes admission to treat an emergency medical condition . . . ." (citations omitted)).

This approach is consistent with EMTALA's core purpose of preventing "patient dumping." *See Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1189 (1st Cir. 1995) (Congress enacted EMTALA because it was "concerned about the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance" (internal quotation marks and citation omitted)); *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 792 (2d Cir. 1999) (noting EMTALA's legislative history shows it was intended to fill vacuum by imposing duty on hospitals to provide treatment to all). A contrary holding—that the adequacy of a patient's care once admitted could be actionable under EMTALA—would render EMTALA the "federal malpractice statute" that Congress intended to avoid. *See Marshall*, 134 F.3d at 325; *Slabik v. Sorrentino*, 891 F. Supp. 235, 237 (E.D. Pa. 1995)

(EMTALA "was designed to create a new cause of action for failure to screen and stabilize patients, not to federalize traditional state-based claims of negligence or malpractice" (citations omitted)), *aff'd*, 82 F.3d 406 (3d Cir. 1996).

Because EMTALA's stabilization requirements do not apply where an individual has been admitted to the hospital, Plaintiff's assertion that the Hospital failed to stabilize her in a timely manner is nothing more than a recast claim of medical negligence. Because Plaintiff's claim sounds solely in negligence, this Court must dismiss Plaintiff's Petition for failure to state a claim.

## IV. CONCLUSION

For these reasons, Tenet Hospitals Limited, d/b/a The Hospitals of Providence East Campus respectfully requests that the Court: (i) grant this Motion to Dismiss in its entirety and dismiss Plaintiff's EMTALA cause of action; and (ii) grant such other and further relief to which Defendant is entitled.

Respectfully submitted,

/s/ *Yvonne K. Puig*
Yvonne K. Puig
State Bar No. 16385400
yvonne.puig@nortonrosefulbright.com
Daphne Andritsos Calderon
State Bar No. 00793266
daphne.calderon@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Telephone:  (512) 536-2450
Facsimile:  (512) 536-4598

*Attorneys for Defendant Tenet Hospitals Limited, d/b/a The Hospitals of Providence East Campus*

## CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on this 5th day of July, 2018, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of the filing of this instrument to the following counsel of record:

JOHN GROST  *Via Electronic Service*
Attorney at Law
619 East Crosby
El Paso, Texas 79902
john@johngrostlaw.com

FELIX VALENZUELA  *Via Electronic Service*
Valenzuela Law Firm
221 N. Kansas Suite 1203
El Paso, Texas 79901
felix@valenzuela-law.com

/s/*Daphne Andritsos Calderon*
Daphne Andritsos Calderon

- 14 -